#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                                                            )<br>            **Plaintiff,**                    )<br>                                                            )<br>v.                                                         )<br>                                                            )<br>JAY D. CARTER and                       )<br>VERNON M. BRONSON,              )<br>                                                            )<br>            **Defendants.**                )<br>_____) | CRIMINAL ACTION<br><br>No. 06-20073-KHV |

#### MEMORANDUM AND ORDER

On May 26, 2006, a grand jury returned an eight-count indictment which charged Jay D. Carter and Vernon M. Bronson with conspiracy to possess with intent to distribute more than five grams of crack cocaine, possession of more than five grams of crack cocaine with intent to distribute, maintaining a residence for the purpose of distributing crack cocaine, and use of firearms during and in relation to a drug trafficking crime. See Indictment (Doc. #1). The indictment also charged Carter with transporting firearms and possessing body armor after having been convicted of a felony and possession of more than five grams of crack cocaine with intent to distribute. Law enforcement officers discovered the crack cocaine and firearms during a search of defendants' apartment on May 20, 2005 and a search of a motel room on June 4, 2005. This matter is before the Court on Jay D. Carter's Motion To Suppress Evidence And Statements (Doc. #33) and Vernon M. Bronson's Motion To Suppress (Doc. #35), both filed October 16, 2006. On December 15, 2006, the Court held an evidentiary hearing. For reasons set forth below, defendants' motions are overruled.

**Factual Background**

Based on the testimony and exhibits at the hearing on defendants' motions, the Court finds the following facts:

**I.    Warrant For Search Of Defendants' Apartment**

On May 19, 2005, Deputy Robert Smith of the Leavenworth County Sheriff's Office learned that Edward Wiley had attempted to pass a check at a Snappy Store. The check was from a checkbook which had been stolen earlier that day, along with various Dewalt tools and a knife, from a truck in rural Leavenworth County. Wiley was arrested and taken to county jail, and Deputy Smith and Detective Mark Metcalf interviewed him that evening. Wiley initially admitted that he had passed four bad checks at several locations in Leavenworth on May 19, but he claimed that he had received several blank checks at a drug house. Shortly after officers told Wiley that his brother might be a suspect in the theft of the items from the truck, and that police had obtained a fingerprint from the truck, Wiley confessed to breaking into the truck and taking the tools and checkbook earlier that day. Wiley explained to officers how he had broken into the truck and the location in the truck of the various items which he had stolen. Wiley told officers that he had stolen the items to trade for crack cocaine and that he had traded the tools for crack cocaine earlier that day at a residence on Pottawatomie Street in Leavenworth. Wiley expressed concern about revealing further details, such as the precise location where he had obtained the crack cocaine.

Wiley told officers that he would not give further details unless he received some type of deal on his potential charges. After Deputy Smith contacted the prosecutor, he told Wiley that the prosecutor would recommend concurrent sentences in exchange for information on the specific residence on Pottawatomie Street where he had obtained the crack. Wiley agreed and gave officers further details,

- 2 -

including the fact that he had returned to the house a second time that day and traded cigarettes (which he had purchased with a forged check) for crack. Wiley described the specific apartment and its location, and told officers that he had seen handguns in the apartment.

Early the next day, May 20, Detective Metcalf took photographs of the location which Wiley had described. Detective Metcalf then met with Wiley, who was still in custody, and showed him the photographs. Wiley immediately pointed out the apartment to which he was referring, and the apartment matched the information he provided the previous day. Wiley also confirmed that he had seen a handgun inside the apartment when he was trading the items and cigarettes for crack cocaine.

Later on May 20, Detective Metcalf applied for a search warrant. The affidavit in support of the search warrant provided as follows:

> **The following crime(s) are being or have been committed:**
>
> KSA 21-3701(a)(1). Theft
>
> **The foregoing items are located at or on:**
>
> 726 A Pottawatomie Street City of Leavenworth, Leavenworth County, Kansas 66048. The listed residence is a two story apartment building, tan in color, located on the North side of Pottawatomie Street, accessed by a concrete drive. The building is the fifth residential building located east of Broadway and has a building of the same size shape, and color directly to its West. Apartment A is located at the South West corner of the building on the ground floor and the entrance door is on the West side of the building.
>
> **The following particularly described items are contraband, evidence, fruits, or instrumentalities of said crime(s):**
>
> DEWALT TOOL KIT five piece with last name of "Day" scribed on each, DEWALT construction style Radio/Charger, BUCK knife with gold blade and leather sheath.
>
> **This affidavit and application is based on the following facts:**

>       On 05192005 at 1830 hours, Deputy Robert Smith and Detective Mark Metcalf were interviewing Edward Joseph Wiley dob:01101967, at the Leavenworth County Sheriff's Office. Wiley was in custody for a forgery he committed early that day in the City of Leavenworth, using a stolen check from rural Leavenworth County. During the course of the interview, Wiley confessed not only to that forgery but three others where he used the same stolen checks.
>
>       Wiley was confronted by Deputy Smith as to how he came upon the checks. Initially, Wiley said he obtained them from a drug house in Leavenworth but later retracted his statement when Deputy Smith informed him that he took a report of the same checks being stolen from a motor vehicle earlier that morning in rural Leavenworth County. Wiley also confessed to stealing the above listed items from the same vehicle.
>
>       Wiley said later that day (May 19th) he took these items to a drug house on Pottawatomie Street between Broadway and Seventh Street, trading each for crack cocaine. Wiley did not know who he purchased the crack cocaine from, other than it being a black male from "the city". Later that same day, Wiley took cartons of cigarettes that he purchased using one of the stolen checks, to the apartment and traded each for crack cocaine. Wiley provided directions and a description of the apartment to Detective Metcalf and Deputy Smith.
>
>       On 05202005, Detective Metcalf used these directions and it led to the above location. Detective Metcalf took photographs of the location. Detective Metcalf then met with Wiley, who was still in custody in the Leavenworth County Jail, and showed him the photographs. Wiley immediately pointed out which apartment he was referring to and it matched the information he provided the previous day.
>
>       In regards to the occupants, Wiley could only say he saw up to two black males and two black females, and they were from "the city". Wiley did state that he saw a handgun inside the residence when he was trading the items and cigarettes for crack cocaine.
>
>       Wiley's criminal history from NCIC list [sic] burglary, theft, forgery, assault, aggravated assault on law enforcement, resisting arrest, insufficient funds, failure to appear, traffic and narcotics.

Government Exhibit 1.

       After officers obtained a warrant, they searched the apartment and found Carter and Bronson.

Officers did not find the tools which Wiley had taken from the truck, but they discovered crack cocaine

in plastic baggies, empty plastic baggies, digital scales with cocaine residue, firearms and various other items. The landlord told officers that Bronson had been living there since March 28, 2005 and that Carter had been living there for some two weeks.

On August 8, 2006, in an interview with Kelly Werkmeister of the Federal Public Defender Office, Wiley stated that he had gone to Pottawatomie Street because it was a known area to obtain drugs. See Defendants' Exhibits 401 and 402. Wiley stated that he had simply pulled his car up outside the apartment complex and several black males approached the car. He stated that he never went into any of the apartments and that he never left the car either time when he traded items for crack on May 19, 2005. Wiley admitted that he had told police about the location of the apartment complex, but said that he never identified a specific apartment or apartment number because he never got out of his car. Wiley said that he could not recall whether officers even asked him if he had left his car to purchase the crack. Wiley later signed an affidavit which verified that Werkmeister's notes of the interview were correct. See Defendant's Exhibit 402.

On October 19, 2006, government counsel interviewed Wiley. In that interview, Wiley stated that he told Detective Metcalf that when he went into "said apt. to trade tools for crack, [he] saw guns on the coffee table." Government's Exhibit 7. Wiley also stated that he told Werkmeister "all other stuff" simply to get rid of her and that he did not want anything to do with what was going on. See id.

At the hearing on defendants' motion to suppress, Wiley testified that except for his initial denial of involvement in the theft of items from the truck, he told the truth during the interviews on May 19 and 20, 2005. Wiley also testified that during the interviews with Werkmeister in 2006, he lied to get rid of her.

## II.     Search Of Motel Room

On June 4, 2005, Officer James Christy of the Leavenworth City Police Department was attempting to locate Becky Kelly on outstanding city warrants. Officer Christy observed Kelly come out of an apartment and then saw a green Ford Mustang convertible pull up and park in the alleyway for several minutes. A short time later, Officer Christy saw a white female exit the residence and enter the passenger side of the Mustang. Officer Christy followed the vehicle and asked dispatch to run the tag. Officer Christy determined that the tag was expired and stopped the vehicle.

Carter was driving the Mustang. When Officer Christy requested his driver's license, proof of insurance and registration, Carter stated that he did not have any identification or paperwork for the car, which he said belonged to his aunt. After Officer Christy learned that Carter had a felony warrant for violation of supervised release from the United States District Court in the Western District of Missouri, Officer Christy arrested him.

In his possession, Carter had $418 and a crack pipe. The passenger in the Mustang, Jenny Trowbridge, had several syringes, a plastic baggie which contained powder, and other drug paraphernalia. During the search of the Mustang, officers discovered an open 12-pack of beer on the back seat, with a plastic baggie of crack cocaine inside the box, a digital scale and a magnetic key for the Super 8 Motel at 303 Montana Court in Leavenworth. Officer William Naff went to the Super 8 Motel and verified that Carter was staying in Room 306. While Naff was at the motel, he saw Bronson and Natalie Burton attempt to get into the room. Bronson had a room key, and Officer Naff asked him to consent to search the room. Bronson stated that "I don't feel I have enough say to give consent." Government Exhibit 3. Bronson stated that he was waiting for Carter, his brother, to come pay the motel bill.

Officer Christy applied for and received a warrant to search the motel room for crack cocaine, plastic baggies, scales, drug paraphernalia, personal hand written notes, identification and currency. See id. The affidavit for search warrant provided in part as follows:

> On 060405 at 1005 hrs, I stopped a 1995 Green Ford Mustang Convertible with MO License plate 496WKH in the 500 Blk of Osage. The tag was expired May of 2005, but had a 2006 sticker on it. A Jay Carter, B/M 071776, Bro/Bro was the driver with a Mo Drivers License [] was the driver. Mr. Carter at first stated it was his car but did not have any paper work. Then he stated it was his aunts car, a Vicky Sonya. Ms. Sonya is listed a[s] the registered owner. Dispatch advised Mr. Carter was on probation and had a warrant through U.S. Marshal's Office. Mr. Carter was taken into custody. Mr. Carter was in possession of $418.00 cash and drug paraphernalia. During this, I was searching the car for paper work of the owner. I found a 12 pack of Corona beer containing 6 beers and several plastic baggies with one containing a white substance through my experience I have come to know as crack cocaine. Mr. carter was arrested. A passenger in the vehicle, Jenny M. Trowbridge W/F 010777, was in possession of three syringes with a plastic baggie that contained powder. Ms. Trowbridge was also in possession of other drug related paraphernalia. During the search of the car, a Super 8 Motel, 303 Montanna Court magnetic key was found. Mr. Carter was asked if we could search this room and he did not reply. Officers Naff and Sweet were summoned to go to Super 8 and establish if Mr. Carter was staying there. Officer Naff radioed to advise Mr. Carter was in fact staying there in room 306. Officer Naff and Sweet were told to keep the room under surveillance until a search warrant was applied for. While watching room 306, Officer Naff and Sweet observed two people, Natalie G. Burton B/F 021388 and Vernan M. Bronson B/m 011380, trying to get into the room. In fact Mr. Bronson had a room key on him. Officer Naff detained them until Cpl Bledsoe could respond. Cpl. Bledsoe asked for consent to search the room. Mr. Bronson responded with "I don't feel I have enough say to give consent." Ms. Burton stated she just came over for a towel. Mr. Bronson had told Officer Naff he was waiting on his brother, Mr. Carter, to come back to the motel room and pay for the bill. Mr. Bronson and Ms. Burton were then released at that point. In my experience, it is not uncommon for drug dealers to use a motel room and have several parties live in there with them. The suspected crack cocaine weighed 31 grams in the baggie.
>
> At this time we would like to search the Super 8 motel room #306, 303 Montanna Court, Leavenworth Ks, Leavenworth County, to see [i]f more fruits of this crime exist. Super 8 Motel is motel business white in color, a wooden framed building with a closed in swimming pool on the north side of the building. The building is rectangular in shape and is east to west. The building i[s] surrounded by an asphalt parking lot. The building has

>   55 rooms divided between three floors.

Id. During the search, officers discovered empty baggies, two stolen vehicle tags, two copper scouring pads used in smoking crack, a box for a digital scale for the same brand and type found in Carter's car, a razor, a small amount of marijuana, and a loaded firearm.

## Analysis

### I.   Warrant For Search Of Defendants' Apartment

Both defendants argue that the warrant for the apartment lacked probable cause and that the affidavit for the warrant contained recklessly false statements. Because the search of the apartment was pursuant to a warrant, defendants have the burden to show that the officers did not establish probable cause for the warrant. See United States v. Carhee, 27 F.3d 1493, 1496 (10th Cir. 1994).

A.   Probable Cause

The Fourth Amendment Warrant Clause provides that "no warrants shall issue but upon probable cause, supported by Oath or affirmation." Franks v. Delaware, 438 U.S. 154, 164 (1978). A warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. Id. at 165. In making a probable cause determination, the court "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). A reviewing court owes great deference to a court's finding of the existence of probable cause to issue a warrant. See United States v. Le, 173 F.3d 1258, 1265 (10th Cir. 1999). The Court need only ask whether, under the

totality of the circumstances presented in the affidavit, the judge had a "substantial basis" for determining that probable cause existed. United States v. Tuter, 240 F.3d 1292, 1295 (10th Cir.), cert. denied, 534 U.S. 886 (2001).

The search warrant was primarily based on information from Riley, who had been arrested for stealing a checkbook and various tools from a truck. When judging information provided by an informant as the foundation supporting probable cause for a search warrant, the Court reviews a mix of factors (such as the informant's veracity, reliability and basis of knowledge) under a flexible totality of the circumstances standard. United States v. Mathis, 357 F.3d 1200, 1205 (10th Cir. 2004); see Gates, 462 U.S. at 238-39. In addition, a law enforcement agent's opinion, based upon his professional expertise, that evidence of illegal activity will be found in the place to be searched, is entitled to consideration in the Court's determination whether probable cause existed at the time a warrant issued. Mathis, 357 F.3d at 1205. An affidavit need not state the reliability of an informant when the informant's information is corroborated by other independent information. See United States v. Jenkins, 313 F.3d 549, 554 (10th Cir. 2002); United States v. Avery, 295 F.3d 1158, 1167 (10th Cir.), cert. denied, 537 U.S. 1024 (2002); United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000); United States v. Sturmoski, 971 F.2d 452, 457 (10th Cir. 1992). An affidavit also does not have to discuss the informant's criminal history when outlining why the informant is reliable. Avery, 295 F.3d at 1167-68; see United States v. Hager, 969 F.2d 883, 887 (10th Cir.), cert. denied, 506 U.S. 964 (1992), abrogated on other grounds by Bailey v. United States, 516 U.S. 137 (1995). An informant's allegations of criminal conduct may be corroborated by independent verification of facts not in themselves incriminatory, because such verification provides a "substantial basis for crediting" the incriminating allegation. Jenkins, 313 F.3d at 553-55 (quoting Gates,

462 U.S. at 245).

Defendants argue that the search warrant for the apartment lacked probable cause because it did not include information as to Wiley's reliability and did not reflect that Detective Metcalf had independently corroborated Wiley's allegations of criminal activity. The Court, however, finds that the affidavit provides a substantial basis for the magistrate's finding of probable cause. Several facts in the affidavit suggest that Wiley was a reliable source. First, Wiley was a known informant in custody on other charges. A reasonable person in Wiley's position would realize that police could hold him responsible if his allegations turned out to be false. See Florida v. J.L., 529 U.S. 266, 270 (2000) (reputation of known informant can be assessed and informant can be held responsible if allegations turn out to be fabricated) (citing Adams v. Williams, 407 U.S. 143, 146-47 (1972)); United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (affidavit demonstrated that informant's tip was credible and reliable in that she met with law enforcement); United States v. Couch, 367 F.3d 557, 560-61 (6th Cir. 2004) (known informant is inherently more credible because informant could potentially be held accountable for providing false information). This provides a disincentive for making false allegations and "[a] court can consider this factor in weighing the reliability of the tip." J.L., 529 U.S. at 276 (Kennedy, J., concurring); see also United States v. Valentine, 232 F.3d 350, 354-55 (3rd Cir. 2000) (informant's face-to-face tip is more reliable than anonymous telephone call), cert. denied, 532 U.S. 1014 (2001). Second, Wiley claimed to have personally participated in the drug transactions and provided a fairly detailed description of those transactions. See Gates, 462 U.S. at 230, 234 (even with some doubt as to informant's motives, his basis of knowledge is one way in which information from informant can be validated; informant's detailed description of alleged wrongdoing observed first-hand entitles tip to greater weight than might otherwise be the case); United

States v. Pinuelas-Sauceda, 53 Fed. Appx. 60, 63 (10th Cir. Dec. 17, 2002) (detail of information lends substantial credibility); United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986) (informant's clear basis of knowledge could be balanced against, rather than automatically overruled by, informant's lack of track record of reliability). Finally, Wiley admitted his involvement in the drug transactions (beyond what police already knew) which was against his penal interest and did not tend to diminish his role as the purchaser of crack cocaine.[1] See United States v. Allen, 297 F.3d 790, 795 (8th Cir. 2002) (informant's statements against own penal interest add to reliability); Sturmoski, 971 F.2d at 457; United States v. Sporleder, 635 F.2d 809, 812 (10th Cir. 1980) (same); United States v. Garcia Macias. No. 05-CR-529-DAK, 2006 WL 3760119, at *12 (D. Utah Dec. 19, 2006) (probable cause based on information from known informant who made statements based on first-hand experience and against penal interest).

The Court notes that the affidavit contains little information as to corroboration of Wiley's allegations. Detective Metcalf confirmed general information provided by Wiley such as the location of defendants' residence. Corroboration of this fact alone is insufficient for probable cause or even reasonable suspicion. See Jenkins, 313 F.3d at 555; see also Tuter, 240 F.3d at 1297 (almost anyone can describe residents and vehicles at particular home without having special knowledge of what goes on inside home). As explained above, however, when combined with the basis of Wiley's knowledge, the detail of his information and the fact that his statements were against his penal interest, such corroboration was

---

[1] Except for his initial denial, Wiley did not attempt to shift blame for the theft except to say that he had stolen the items to obtain crack cocaine. Cf. United States v. Hall, 113 F.3d 157, 159 (9th Cir. 1997) (once individual believes police have sufficient evidence to convict, statement that another person was more involved gains little credibility from its inculpatory aspect); United States v. Jackson, 818 F.2d 345, 348 (5th Cir. 1987) (admitted perpetrator of crime has reason to shade information to exculpate himself or curry favor with officials).

sufficient. Wiley gave the location where he traded the tools and cigarettes for crack. Other than the description of the location, officers had little additional information that they could corroborate without a search warrant.

Based on the above factors, "the informant's story and the surrounding facts possessed an internal coherence that gave weight to the whole." See Massachusetts v. Upton, 466 U.S. 727, 734 (1984). Under the totality of the circumstances presented in the affidavit, the issuing judge had a substantial basis for determining that Detective Metcalf had probable cause to believe that the apartment on Pottawatomie Street would contain the tools which Wiley had taken from the truck. See Gates, 462 U.S. at 243 n.13 (probable cause requires only probability or substantial chance of criminal activity, not actual showing of such activity).

B.     Recklessly Omitted Information

Defendants argue that Detective Metcalf recklessly omitted material information which would have negated probable cause in violation of Franks v. Delaware, 438 U.S. 154 (1978).[2]  The Fourth Amendment prohibits an affiant in an application for a search warrant from knowingly and intentionally, or with reckless disregard for the truth, making a false statement. United States v. Basham, 268 F.3d 1199, 1204 (10th Cir. 2001) (citing Franks, 438 U.S. at 171-72), cert. denied, 535 U.S. 945 (2002). Where an affiant makes a false statement in an affidavit for a search warrant, the warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause. See id. The Tenth Circuit has also

---

[2]     At the hearing on defendants' motions, defendants conceded that Detective Metcalf did not intentionally omit material information. In any event, the Court finds that to the extent that Detective Metcalf omitted any material information, he did not do so intentionally.

applied this rule "to intentional or reckless omissions of material facts, which, if included, would vitiate probable cause." Id. (citing Stewart v. Donges, 915 F.2d 572, 581-83 (10th Cir. 1990)). Recklessness can be inferred where the omitted facts were "clearly critical" to a finding of probable cause. DeLoach v. Bevers, 922 F.2d 618, 622 (10th Cir. 1990), cert. denied, 502 U.S. 814 (1991). In a case where defendant alleges that information was intentionally omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and determining whether the affidavit would still give rise to probable cause. Basham, 268 F.3d at 1204 (citing Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996)).[3]

Defendants first maintain that Detective Metcalf omitted the fact that the prosecutor offered to recommend concurrent sentences on Wiley's potential charges in exchange for information on the specific residence which he visited to obtain crack. The fact that officers orally promised Wiley that the prosecutor would recommend concurrent sentences was not "clearly critical" to a finding of probable cause. Officers did not explain how much time Wiley faced or any specifics as to how much less time, if any, Wiley would serve if he cooperated. Officers also refused to put the agreement in writing and Wiley knew that the prosecutor's recommendation was not binding on the sentencing court. The deal between Wiley and officers was quite vague and a reasonable person in Wiley's situation would have little comfort that his

---

[3] A hearing on the veracity of an affidavit supporting a warrant is required if defendant makes a substantial showing that the affidavit contains intentional or recklessly false statements and if the affidavit, purged of its falsities, would be insufficient to support a finding of probable cause. United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997). Defendants made the necessary showing for a hearing by presenting Wiley's affidavit, which states that he did not tell officers that he had gone inside any apartment and that he did not identify any specific apartment for them. Absent such information, the affidavit is not sufficient to support a finding of probable cause to search defendants' specific apartment.

cooperation would significantly reduce his sentence. In any event, deals between law enforcement officers and individuals charged with crimes are quite common and their existence, by themselves, ordinarily would not alter the probable cause determination. The Supreme Court has noted that "[p]eople do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." United States v. Harris, 403 U.S. 573, 583-84 (1971); see Reivich, 793 F.2d at 959. Even if Detective Metcalf's affidavit had included the recommendation for concurrent sentences in exchange for Wiley's cooperation, the affidavit would have nevertheless supported a finding of probable cause. See United States v. Davis, 617 F.2d 677, 693 (D.C. Cir. 1979) (one who knows police are in position to charge him with serious crime will not likely undertake to divert them down blind alleys) (citing W. LaFave, Search and Seizure, § 3.3, at 528 (1978)), cert. denied, 445 U.S. 967 (1980); United States v. Pope, 330 F. Supp.2d 948, 954-55 (M.D. Tenn. 2004) (criminals are regularly best source for information about criminal activity; test for probable cause is not informant's altruism but reliability of his information); see also Harris, 403 U.S. at 584 (informant's admission that he had been buying illicit liquor on certain premises over long period and currently, without more, implicated that property and furnished probable cause to search).

Defendants next maintain that Detective Metcalf omitted any information on Wiley's reliability or corroboration of his allegations. As explained above, even absent specific information on Wiley's reliability or corroboration, the issuing judge had sufficient information to support a finding of probable cause. The

omitted information did not tend to negate a finding of probable cause. In particular, Wiley apparently stated that the apartment had a bullet hole and that he was aware of a recent shooting there. Detective Metcalf knew from other sources that approximately two months earlier, a shooting had occurred at the apartment. In addition, Deputy Smith's prior interview with the owner of the truck corroborated Wiley's statement about the location of the items in the truck and how he had broken into the truck. Because information as to Wiley's reliability and corroboration of his allegations would have further *supported* a finding of probable cause, such information was not "clearly critical" to the issuing judge's determination.

### C. *Leon* Good Faith Exception

In the alternative, the Court finds that the search of defendants' apartment can be upheld under the good faith exception of United States v. Leon, 468 U.S. 897 (1984).[4] "[W]hen police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause." United States v. Price, 265 F.3d 1097, 1102 (10th Cir. 2001), cert. denied, 535 U.S. 1099 (2002); see Leon, 468 U.S. at 913. The good faith inquiry is limited to the "objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23; see United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993); United States v. Cook, 854 F.2d 371, 372 (10th Cir. 1988). The government bears the burden of proving that its agents' reliance upon the

---

[4] In cases where the executing officer is different from the officer who applied for the warrant, Leon requires that both officers act in good faith. See 1 Wayne R. LaFave, Search & Seizure: A Treatise On The Fourth Amendment, § 1.3(f) at 83-84. Because Detective Metcalf applied for and executed the warrant, the Court evaluates only whether his reliance on the warrant was objectively reasonable. In this case, defendants challenge only the sufficiency of the affidavit, not the execution of the warrant.

warrant was objectively reasonable. United States v. Corral-Corral, 899 F.2d 927, 932 (10th Cir. 1990); Cook, 854 F.2d at 373. To determine whether an officer relied in good faith on a warrant, the Court must examine the text of the warrant and the affidavit to ascertain whether the agents might have reasonably presumed the warrant to be valid. McKneely, 6 F.3d at 1454; Corral-Corral, 899 F.2d at 932; see also Price, 265 F.3d at 1102 (issue whether affidavit and search warrant were sufficient to merit reasonable reliance by officers).

The first notion to be remembered in considering the good faith principle is the presumption that when an officer relies upon a warrant, the officer is acting in good faith. McKneely, 6 F.3d at 1454. This presumption, though not absolute, must carry some weight. Id. In addition, the Court recognizes that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers. United States v. Bishop, 890 F.2d 212, 217 (10th Cir. 1989); United States v. Cardall, 773 F.2d 1128, 1133 (10th Cir. 1985).

The Supreme Court has noted that the good faith exception to the exclusionary rule does not apply in four situations: (1) where the magistrate in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 923.

Defendants argue that Leon does not apply because (1) Detective Metcalf recklessly omitted material information which would have negated probable cause in violation of Franks, supra, and (2) the

warrant was so facially deficient (because of the lack of information as to Wiley's reliability or corroboration of his allegations) that executing officers could not reasonably presume that it was valid. As explained above, Detective Metcalf did not recklessly omit any material which would have negated probable cause. The Court therefore rejects defendants' first argument.

As to whether the officers' reliance on the warrant was reasonable, good faith is absent only when an officer's reliance was "wholly unwarranted," McKneely, 6 F.3d at 1454, or "entirely unreasonable." Leon, 468 U.S. at 923. Inadvertent omissions do not overcome the presumption that an officer acted in good faith reliance on the warrant. See United States v. Tisdale, 248 F.3d 964, 974 (10th Cir. 2001), cert. denied, 534 U.S. 1153 (2002). On the other hand, if an officer intentionally or recklessly omits material information which would have negated probable cause, Leon does not apply. See Basham, 268 F.3d at 1204; see also United States v. Orr, 864 F.2d 1505, 1508 (10th Cir. 1988) (Leon exception does not apply to search warrants granted on basis of recklessly or intentionally false affidavit). As explained above, recklessness can be inferred where the omitted facts were "clearly critical" to a finding of probable cause. DeLoach, 922 F.2d at 622. The information as to Wiley's reliability and/or corroboration of his allegations did not tend to negate a finding of probable cause. Indeed, such information actually supports the issuing judge's determination of probable cause.

For the above reasons, the Court overrules defendants' motions to suppress evidence obtained from the search of defendants' apartment on May 20, 2005.

## II.    Search Of Motel Room

Carter argues that the warrant for the motel room was not based on probable cause. Because the search of the motel room was pursuant to a warrant, defendant has the burden of proof to show that the

officers did not establish probable cause for the warrant. See Carhee, 27 F.3d at 1496.

Probable cause requires a nexus between the contraband to be seized or the suspected criminal activity and the place to be searched. United States v. Rowland, 145 F.3d 1194, 1203 (10th Cir. 1998). This nexus may be established through normal inferences about the location of evidence. See United States v. Gant, 759 F.2d 484, 488 (5th Cir.), cert. denied, 474 U.S. 851 (1985). The search of a motel room is analogous to the search of an individual's residence. "Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity." Rowland, 145 F.3d at 1204; see United States v. Nolan, 199 F.3d 1180 (10th Cir. 1999) (home of drug crime suspect may not be searched simply because suspect is connected to illegal drug activity at different location). However, there need not be direct evidence or personal knowledge that the items sought are located at the place to be searched. United States v. $149,442.43 in U.S. Currency, 965 F.2d 868, 874 (10th Cir. 1992). The affidavit supporting the search of a suspect's residence is sufficient when it describes circumstances from which a person of reasonable caution could infer that evidence or contraband will be found there. Id.; United States v. Brantley, 33 Fed. Appx. 986 (10th Cir. 2002).

Officer Christy's affidavit provides a substantial basis for the issuing judge's finding of probable cause. In particular, Christy's affidavit indicates that (1) Carter had in his possession $418.00 cash and drug paraphernalia; (2) the other occupant of the vehicle possessed three syringes with a plastic baggie which contained powder and other drug paraphernalia; (3) during the search of the car, Officer Christy found a motel key to a local Super 8 motel, a 12 pack of Corona beer which contained only six beers and several plastic baggies with one containing a white substance which Officer Christy recognized as crack

cocaine (weighing some 31 grams); (4) motel employees confirmed that Carter was staying at the motel in room 306; (5) Carter's brother and another individual were found near the motel room, purportedly waiting for Carter to arrive and pay the motel bill. In these circumstances, the issuing judge had a substantial basis for finding probable cause to search the hotel room. See United States v. Lewis, No. 02-20300-MAV, 2003 WL 124017 (W.D. Tenn. Jan. 14, 2003) (hotel notepad and key found in defendant's car along with scales, marijuana residue and open sandwich bags would lead reasonable officer to believe contraband was in hotel room and give rise to probable cause to search that room). At a minimum, Officer Christy acted in good faith and reasonable reliance on the warrant under Leon. See United States v. Marion, 238 F.3d 965 (8th Cir. 2001) (good faith reliance on warrant issued to search hotel room where hotel key found in defendant's car along with marijuana, knife, pager and plastic bag containing crack cocaine and open, half-full beer can).

For the above reasons, the Court overrules Carter's motion to suppress evidence obtained from the search of the motel room on June 4, 2005.

**IT IS THEREFORE ORDERED** that Jay D. Carter's Motion To Suppress Evidence And Statements (Doc. #33) filed October 16, 2006 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Vernon M. Bronson's Motion To Suppress (Doc. #35) filed October 16, 2006 be and hereby is **OVERRULED**.

Dated this 8th day of January, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge